# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **Bibiana M. Rodriguez,** | : | |
| | : | Case No. 11-18847-RGM |
| | : | Chapter 13 |
| **Debtor** | : | |
| | : | |

| | | |
|---|---|---|
| **Bibiana M. Rodriguez,** | : | |
| | : | |
| **Plaintiff** | : | Adversary Proceeding No._____ |
| | : | |
| **vs.** | : | |
| | : | |
| | : | |
| **Wells Fargo Bank, N.A.,** | : | |
| | : | |
| **Defendant** | : | |

## COMPLAINT

COMES NOW the Plaintiff, Bibiana Rodriguez, by counsel, and files this Complaint against the

Defendant Wells Fargo, N.A. and in support thereof she states as follows:

### JURISDICTION AND VENUE

1. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157.

    This is a core proceeding.

2. Venue is proper under 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

3. Plaintiff is a lawful permanent resident of the United States of America. She is a hard working American. She works long hours as a housekeeper for hotels and motels. She also provides day care for infants.

4. Upon information and belief, the Defendant Wells Fargo Bank, N.A. (hereafter, "Wells Fargo") allegedly owns and services the Note and Deed of Trust on the Plaintiff's home. Wells Fargo has its principal offices in San Francisco, California.

5. Plaintiff listed the debt allegedly due to Wells Fargo as disputed in her petition for relief.

6. The Defendant filed a proof of claim on March 20, 2012 (Claim # 1), incorporated herein by reference as though fully set forth.

7. The Defendant's Proof of Claim should be denied: it claims an excessive amount of interest, stating, as it does, under penalty of perjury, that the interest rate on the loan as of the petition date is "6.29%". *Proof of Claim*, p. 1, # 4. Plaintiff refuses to pay this usurious amount. The Defendant knows or should know the claimed interest rate is false and excessive. The Defendant's excessive claim for interest constitutes a material breach of the Note. Consequently the Defendant cannot enforce the Note and the claim must be denied.

8. Federal Rule of Bankruptcy Procedure 3001(c)(2)(A) requires the itemization "of the interest, fees, expenses, or charges shall be filed with the proof of claim." When the Supreme Court approved Rule 3001 it did not contemplate, "that creditors could ignore Bankruptcy Rule 3001's requirements unless and until a debtor complains then cry 'no harm, no foul' by producing documents that should have been produced initially." *In re Depugh*, 409 B.R. 84, 98 (Bank. S.D.Tex. 2009). Fed. R. Bankr. P. 3001 (c) provides

that when "a claim is based on a writing" the "original or a **duplicate shall be filed with the proof of claim**" (emphasis added).

9. The Proof of Claim violates the provisions of Federal Rule of Bankruptcy Procedure because it failed to itemize "interest and other charges". The Proof of Claim lists more than $10,800 for "FC ATTY FEES/COSTS". *Proof of Claim*, Attachment A, p. 1. Presumably, "FC" refers to "foreclosure costs". However there has not been any foreclosure in this case. Plaintiff has no idea of the charges behind the purported $10,800, i.e., whether they be reasonable or unreasonable, lawful or illicit. The Defendant further failed to itemize the "Late Charges", "Escrow shortage" and "BK Atty Fees/Costs". *Id.* The Defendant falsely stated the last payment received was on "5/15/09". *Id.*, Attachment A, p. 2. The Defendant provided a selective "snapshot" of rate changes. *Id.*, Attachment A, p. 3. However the Defendant intentionally concealed the interest rate for December of 2011, even though it filed the Proof of Claim in March of 2012 when it certainly had the interest-rate information available to it, and instead falsely stated the interest rate as of the petition date as "6.29 %". Neither the court nor the Plaintiff can possibly determine, from the Proof of Claim as filed, how in the current environment of declining interest rates this peculiar loan managed to go from "4.95000%" on July 15, 2011, as alleged in the snapshot, to "6.29%" as alleged on p. 1 of the Proof of Claim. The Defendant failed, intentionally, to attach all writings in support of the claim; specifically, the Defendant omitted the Note. Without the Note no one can determine the basis for the *amounts* claimed by the Defendant in the Proof of Claim. The absence of the Note coupled with the false interest rate stated on the face of the Proof of Claim, the failure to itemize "FC ATTY FEES" and "BK Atty Fees/Costs" renders the Proof of

Claim *prima facie* invalid. The Defendant's Proof of Claim is not entitled to any presumption of validity. In fact, the court should deem it materially defective and presumptively invalid.

10. The Defendant intentionally omitted the Note from the Proof of Claim in order to conceal from the court, debtors and their counsel the Settlement Agreement to which this Note is, in part, subject.

11. Your Plaintiff cannot read or write through no fault of her own, a fact known to the Defendant since at least December of 2010 when Guillermo D. Uriarte, Esquire, Plaintiff's prior counsel, informed the Defendant of this unfortunate fact. She speaks only Spanish, a fact also known to the Defendant.

12. Plaintiff attaches the Note that is the subject of the Proof of Claim as Exhibit 1 and the Deed of Trust as Exhibit 2.

13. The Note is commonly referred to as a "Pick-a-Payment" loan. The Note provides for negative amortization and the Defendant's disclosures in connection with the loan grossly violated numerous provisions of the Truth-in-Lending Act (15 U.S.C. § 1601 *et seq*) (hereafter, "TILA").

14. A multitude of class action lawsuits have been filed concerning the Pick-a-Payment loans based on the gross violations of TILA. The court consolidated the cases into a multi-district litigation case in the United States District Court for the Northern District of California, San Jose Division, in Case No. M:09-CV-2015-JF, with Judge Fogel presiding over the case.

15. The parties reached a Settlement Agreement. Plaintiff attaches a copy of it as Exhibit 3. Judge Fogel approved the settlement, as evidenced by the attached Exhibit 4. The Court

entered final judgment and upon information and belief no appeal has been taken from the final judgment.

16. The Settlement Agreement describes three Classes: A, B and C. Plaintiff is a member of Class C, defined on p.31 of *Exhibit 3*. In exchange for surrendering her right to sue under TILA for the violations of statutes intended to provide the consumer with clear and unambiguous disclosures concerning the loan, the Settlement Agreement provides that the Defendant shall review your Plaintiff for a HAMP modification (*Id.*, p. 31), and if not qualified under HAMP or if Plaintiff elects to not accept a HAMP modification, then the Defendant shall consider Plaintiff for a Mortgage Assistance Program 2 modification (hereafter, "MAP2R") (*Id.*, p. 35). The goal of a MAP2R modification is to get the Plaintiff's monthly payment to 31% of her gross income by utilizing a series of steps, or "waterfall" (*Id.*, pp. 36-39).

17. On or about December of 2010, the Plaintiff and Defendant began discussions on a modification of the Plaintiff's loan. Mr. Uriarte represented the Plaintiff in these discussions at all times herein. The Plaintiff, again, unable to read or write, provided to Mr. Uriarte the wrong promissory note, one relating to an earlier refinance of her property. Thus for one year Mr. Uriarte attempted to modify the wrong loan. The Defendant, on the other hand, *knew* that the Plaintiff had a "Pick-a-Payment" loan, knew the Plaintiff was a Class Member of the Settlement Agreement and knew that it had a positive legal duty under the Settlement Agreement to review the Plaintiff for a loan modification firstly under HAMP and then, secondly, under MAP2R. The Defendant concealed from Plaintiff's counsel that the loan was a Pick-a-Payment loan. The Defendant further concealed from Plaintiff's counsel that the Plaintiff clearly was a

5

member of Class C. The Defendant materially breached the Settlement Agreement by failing to review the Plaintiff for a modification under either the HAMP program or under MAP2R.

18. The Defendant, without disclosing the Settlement Agreement to the Plaintiff's counsel, did provide several "excuses" for not modifying the loan. For example, the Defendant said it could not verify the Plaintiff's income, another time the Defendant said the Plaintiff did not pass the NPV test under HAMP, still in another instance the Defendant said the Plaintiff did not have enough income. All of these excuses were false: the Defendant could in fact verify the Plaintiff's income, Plaintiff in fact passes the NPV test under HAMP and the Plaintiff has sufficient income. Even if the Plaintiff did not qualify under HAMP, which in point of fact she did, the Defendant materially breached the Settlement Agreement by failing to review the Plaintiff for a loan modification under MAP2R. Given the waterfall steps outlined in the Settlement Agreement, clearly Plaintiff qualifies for a loan modification under MAP2R: if the Defendant, in good faith, adhered to the Settlement Agreement, the bank could easily get her monthly payment to 31% of her gross income, could easily determine that the Plaintiff provides greater net present value to the Defendant than any foreclosure and could have easily cured the Defendant's gross violations under TILA.

19. The Defendant further breached the Settlement Agreement by failing to keep its "Servicing Commitments" required under the Agreement (*Id.*, p. 40), failing to abide by the required "Restrictions on Foreclosure (*Id.*, p. 42) and failing to offer the HAFA-alternatives to foreclosure (*Id.*, p. 42).

20. The Defendant remains in material breach of the Settlement Agreement for failure to review the Plaintiff, in good faith, for a modification under HAMP or MAP2R. Of course, if the Plaintiff sought damages, rescission and or recoupment under TILA, the Defendant would then provide the court with a copy of the Note and parade the Settlement Agreement before it.

21. An actual controversy exists relating to the rights and duties under the Settlement Agreement.

22. Plaintiff filed her Chapter 13 petition on December 12, 2012. Shortly afterwards, on or about December 19, 2011, the undersigned received a statement from the Defendant in which it claimed tremendous amounts as owed. On or about December 28, 2012, the Plaintiff, by the undersigned, sent a qualified written request (hereafter, "QWR") pursuant to 12 U.S.C. § 2605 (e) in which the Plaintiff disputed the amounts claimed as owed by the Defendant. Plaintiff specifically requested a statement that showed all interest rates claimed by the Defendant, the origination documents, a copy of the promissory note and a loan history statement.

23. The Defendant responded on or about January 24, 2012. The Defendant, without just cause or excuse, refused to provide the interest rate information, refused to provide the origination documents and refused to provide any details whatsoever regarding the amounts claimed as owed. The Defendant only provided a copy of the Note and Deed of Trust. The Defendant stated that it would provide the loan history by separate cover. In further response, the Defendant stated that it would not provide any other documents in the absence of a subpoena. The Defendant objected to the QWR on the grounds that it constituted "discovery". Congress passed RESPA precisely with the intended purpose to

allow borrowers and their counsel an opportunity to discover the basis for the amounts claimed by the lender **without a subpoena**.

24. On March 8, 2012, the Plaintiff, by counsel, sent a follow up letter requesting, again, the interest rate information and origination documents. In addition, as the Defendant had not sent the promised loan history statement, Plaintiff again requested the loan history statement. On or about March 18, 2012, the Defendant responded that it would not provide the loan history statement or any other documents without a subpoena. The Defendant filed its false Proof of Claim on March 20, 2012.

25. The Deed of Trust contains an incorrect property description and a facially defective notarization.

26. Plaintiff lacks an adequate remedy at law, faces irreparable harm and her rights are in peril.

**COUNT I:  INJUNCTION**

27. The foregoing allegations are incorporated herein.

28. The Defendant remains in material breach of the Note, Deed of Trust and Settlement Agreement.

WHEREFORE, Plaintiff prays that the court temporarily and permanently enjoin the Defendant from any foreclosure, or any other collection activity under the Note or Deed of Trust, so long as the Defendant refuses to cure its material breaches.

## COUNT II: Specific Performance

29. The foregoing allegations are incorporated herein.

30. The terms of the Settlement Agreement are definite and certain.  It is feasible for the court to decree that the Defendant specifically perform its obligations under the Settlement Agreement.  Plaintiff is prepared and willing to meet all of her duties under the Settlement Agreement.  Plaintiff has in fact forgone her right to sue the Defendant for its gross violations of TILA.  Plaintiff has been and is willing to provide whatever is reasonably necessary to the Defendant in order for the Defendant to perform its obligations.

WHEREFORE, Plaintiff prays that the court enter a decree ordering the Defendant, in good faith, to perform all of its obligations contained in the Settlement Agreement, award her costs of suit, attorney fees, and such other relief as the court deems appropriate.

## COUNT III:  BREACH OF CONTRACT

31. The foregoing allegations are incorporated herein.

32. The Defendant materially breached the parties' agreements.

WHEREFORE, Plaintiff prays that the court award her all damages caused by the Defendant's breaches, costs of suit and such other relief as the court deems appropriate.

## COUNT IV:  USURY 12 U.S.C. § 85, § 86

33. The foregoing allegations are incorporated herein.

34. The defendant has knowingly collected, charged, claimed and knowingly continues to collect, charge and claim excessive interest contrary to the express terms contained in the Note and Deed of Trust.

WHEREFORE, Plaintiff prays for a judgment against the Defendant pursuant to 12 U.S.C. § 86 declaring a forfeiture of the entire interest under the Note, awarding double the amount of usurious interest paid to the defendant and or its subsidiary, her costs and attorney fees, and for such other relief as the court deems appropriate.

## COUNT V:  INVALID PROOF OF CLAIM

35. The foregoing allegations are incorporated herein.
36. The Defendant materially breached the Note and Deed of Trust by claiming excessive interest and other illicit amounts not authorized under either the Note or Deed of Trust. The Defendant breached the Deed of Trust by failing, without just cause or excuse, to provide the documents requested under RESPA.  The Defendant materially breached the Settlement Agreement by failing to consider, in good faith, the Plaintiff for a loan modification under HAMP.  The Defendant materially breached the Settlement Agreement by failing at any time to consider the Plaintiff for a modification under MAP2R.  As the Defendant remains in material breach of the parties' agreements, it cannot enforce the agreements.
37. The Proof of Claim states an inflated interest rate as of the petition date, fails to itemize interest and costs, fails (intentionally) to attach the Note, a necessary document to determine the amounts claimed.

38. The Deed of Trust contains an incorrect property description and a facially defective notarization.

WHEREFORE, Plaintiff prays that the court disallow the Proof of Claim, cancel the Deed of Trust on the property, and order the Defendant to assign both the Note and Deed of Trust to the Plaintiff, award all costs and attorney fees incurred herein and for such other and further relief as the court deems appropriate.

## COUNT VI:  DECLARATORY JUDGMENT

39. The foregoing allegations are incorporated herein.
40. An actual controversy exists as to the rights and duties of the parties under the Settlement Agreement.

WHEREFORE, Plaintiff prays that the court enter a judgment declaring the Defendant has a duty to review, in good faith, the Plaintiff for a loan modification under HAMP, a duty, if the Plaintiff does not qualify under HAMP or elects for a review under MAP2R, to review, in good faith, the Plaintiff for a loan modification under MAP2R;  and, furthermore, to declare the Defendant has a duty to offer HAFA-alternatives, such as a Deed-in-lieu of foreclosure or a short sale, to the Plaintiff in the event she does not qualify under either HAMP or MAP2R, and awards costs of suit and such other relief as the court deems appropriate.

## COUNT VI:  Violation of RESPA (12 U.S.C. § 2605)

41. The foregoing allegations are incorporated herein.
42. The Defendant failed to property respond to the RESPA request because it refused without justification to provide the loan history statement, information pertaining the interest rate, including but not limited to the index and documents pertaining to the

origination of the loan. The Defendant further violated RESPA by insisting upon a subpoena as a prerequisite to providing the documents.

43. The Defendants violations caused Plaintiff to incur costs, such as copying costs and postage, time off work to obtain documents for counsel, and also caused severe stress and mental anguish to the Plaintiff and her family.

44. The violations are part of a pattern, which is widespread, particularly as they relate to the Pick-a-Payment loans.

WHEREFORE, Plaintiff prays for a judgment against the Defendant for violating the provisions of 12 U.S.C. § 2605 awarding all actual damages in an amount to be proven at trial, statutory damages, costs and attorney fees, and for such other relief as the court deems appropriate.

Respectfully Submitted,
Bibiana M. Rodriguez, By Counsel

 /s/ Alfred P. Boland
Alfred P. Boland, VSB #31037
Counsel to Debtor
4000 Legato Road, Suite 1100
Fairfax, Virginia  22033
703-896-7678 (office)
703-896-7601 (facsimile)
apboland@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Adversary Complaint was delivered by electronic mail to Thomas P. Gorman, Trustee, and to Mark D. Meyer, Counsel for Wells Fargo, N.A. on this 19th day of April, 2012.

 /s/ Alfred P. Boland
Alfred P. Boland